[Nos. 3980–3–III; 5304–1–III.   Division Three.   February 21, 1985.]

VIRGIL J. TAYLOR, *as Personal Representative, Appellant,* v. CESSNA AIRCRAFT CO., INC., *Respondent,* THE ESTATE OF JOHN ALEXANDER, *Appellant.*

*Irving H. Bennion* and *Van Camp, Bennion & Kelleher,* for appellants.

*James P. Connelly* and *Winston & Cashatt,* for respondent.

MUNSON, J.—Virgil Taylor and Judy Alexander appeal from the trial court's refusal to grant their motions for new trial, and contend (1) certain evidence was erroneously admitted at trial; (2) defense counsel gave improper closing arguments; and (3) that they are entitled to a new trial and sanctions based upon newly discovered evidence and misconduct in connection with discovery violations. We reverse.

On August 31, 1976, a Cessna TU–206F, piloted by John D. Alexander, took off from Spokane and made intermediate stops in Lewiston and Pasco before returning that evening. Passengers aboard were Charles G., Vivian R. and Patrick Kimball, and Mark E. Bruce. On the final approach for landing at Felts Field in Spokane, the plane struck some power lines and crashed. All aboard were killed.

Some eyewitnesses believed the plane was coming in too low; others heard the engine sputter. The National Transportation Safety Board (NTSB) determined the propeller was rotating upon impact, indicating the engine was running. It also determined the right fuel tank was empty, while the left fuel tank had usable fuel in it. Mr. Alexander had begun the flight with approximately 40 gallons of usable fuel in each of two tanks, and had used a total of approximately 39.5 gallons on the trip. The plane was equipped with a Sedco Manufacturing Company 3–position fuel selector valve, which at the time of the crash was slightly beyond the left tank detent; the right tank inlet port was slightly open.

Virgil Taylor, as personal representative of the Kimball estates, sued Cessna Aircraft Company, Sedco and Mr. Alexander's estate, alleging the cause of the accident was either a defective fuel selector system or pilot error. Judy Alexander appeared as personal representative of Mr. Alexander's estate. Mr. Taylor and Mrs. Alexander settled, and the trial court dismissed Cessna's cross claim against Mr. Alexander's estate. Mrs. Alexander was then realigned as a plaintiff. Hereinafter, Taylor refers to all the appellants. Cessna acquired Sedco before trial.

Taylor's theory at trial was that the accident was caused by a faulty fuel selector valve. Taylor alleged the defective selector valve allowed fuel to be drawn from the opposite tank selected, thereby causing fuel starvation when that tank became depleted. Cessna admitted the fuel selector valve was mismilled, but denied the mismilling caused the accident. It contended a small amount of fuel would be drawn from the opposite tank regardless of whether the valve was mismilled, and this was inconsequential because a large amount of fuel would be simultaneously drawn from the tank selected. Cessna alleged the accident was caused by pilot error in coming in too low and/or in failing to follow the standard procedure of switching to the fullest tank for each landing and takeoff.

The trial occurred in November 1979, and the jury

returned a general verdict for Cessna. Taylor's motions for a new trial, CR 59(a), and for relief from judgment, CR 60, were both denied.

Regarding the first new trial motion, Taylor contends certain deposition evidence was erroneously admitted, and defense counsel committed misconduct during closing argument.

A trial court's denial of a new trial is reviewed only for abuse of discretion. *Nelson v. Mueller,* 85 Wn.2d 234, 533 P.2d 383 (1975); *Bunnell v. Barr,* 68 Wn.2d 771, 415 P.2d 640 (1966); *Barth v. Rock,* 36 Wn. App. 400, 674 P.2d 1265, *review denied,* 101 Wn.2d 1014 (1984). When the new trial motion challenges the effect on the jury of events occurring during trial, we must accord considerable deference to the trial court. *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 562 P.2d 1276, *review denied,* 89 Wn.2d 1010 (1977).

Robert Youngquist was originally Taylor's expert, but Youngquist concluded the accident was caused by pilot error. He based his conclusion on an NTSB report of a test flight, which he assumed was performed with the actual fuel selector valve from Mr. Alexander's plane. Youngquist was deposed on April 25, 1978. On July 11, 1978, Taylor learned from a Cessna employee the actual valve was not used in the test flight; the employee stated the flight tests had nothing to do with the valve but were merely to determine how the plane reacted to restarting during descent. Trial did not begin until November 1979, yet Taylor did not redepose Youngquist or subpoena him to testify at trial. Taylor now claims admission of the deposition into evidence was prejudicial because he was deprived of his right to cross-examine Youngquist, and Youngquist's opinion was irrelevant because it was based upon a false assumption.

Cessna argues Taylor waived this claim of error because Taylor introduced the deposition into evidence. Taylor correctly asserts an attempt to mitigate the prejudicial effect of erroneously admitted evidence does not constitute a

waiver of objection to that evidence. *Storey v. Storey,* 21 Wn. App. 370, 585 P.2d 183 (1978), *review denied,* 91 Wn.2d 1017 (1979). Cessna further argues the deposition of an absent witness is admissible for any purpose. CR 32(a)(3). Depositions may only be used "so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying . . .". CR 32(a).

■ However, having failed to depose Youngquist a second time or request a subpoena, Taylor cannot complain he was denied the right to cross–examine Youngquist. Assuming arguendo Youngquist's opinion was irrelevant, we find no abuse of discretion in refusing to order a new trial. The jury heard almost 2 weeks of testimony, and the trial court was in the best position to judge the effect of the evidence on the jury.

Taylor claims the error was compounded when Cessna's counsel mentioned Youngquist's deposition in closing argument. The failure to timely object generally precludes review. RAP 2.5(a); *Nelson v. Martinson,* 52 Wn.2d 684, 328 P.2d 703 (1958). *But see Warren v. Hart,* 71 Wn.2d 512, 429 P.2d 873 (1967); *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956) (appellant need not have made timely objection and requested a curative instruction if misconduct was so flagrant no instruction could cure it). Notwithstanding, we find no abuse of discretion in denying the motion on this ground.

Taylor claims two additional incidents of misconduct by Cessna's counsel are reversible error. First, during direct examination of Taylor's expert, Evans, the trial court sustained an objection to the following as a nonresponsive answer:

Q What did you want to check out with these tests?
A Well, in the report they concluded that the fact that the valve would be open to an empty tank was of no consequence.

Under federal law, NTSB and Federal Aviation Administration (FAA) conclusions as to the cause of an airplane crash are inadmissible in private lawsuits. *Keen v. Detroit*

*Diesel Allison,* 569 F.2d 547 (10th Cir. 1978); 49 U.S.C. §§ 1441(e), 1903(c). The trial court denied Taylor's motion to strike, but prohibited Cessna from cross–examining Evans on the matter. The court stated: "It is not going to go any farther than it already has, that's it." Cessna's counsel read the excerpt from Evans' direct examination verbatim in closing argument, over Taylor's objection.

The second alleged incident of misconduct was the statement by Cessna's counsel that the NTSB aeronautical engineer "concluded" the fuel selector valve had no effect on the operation of the aircraft. Taylor objected to a factual observation being characterized as a conclusion.

█ The trial court has discretion to allow verbatim recitation of portions of the trial transcript during closing argument. *Gephart v. Stout,* 11 Wn.2d 184, 118 P.2d 801 (1941); *Ralton v. Sherwood Logging Co.,* 54 Wash. 254, 103 P. 28 (1909); 75 Am. Jur. 2d *Trial* § 234, at 313–14 (1974). In denying this motion for new trial, the court ruled Taylor received a fair trial, considering the evidence as a whole. This was a lengthy trial which produced a voluminous record of eyewitnesses and expert opinions for both sides, and the jury appears to have weighed the evidence and made a considered decision. We find no error.

Taylor next contends the court erred in denying his second motion for a new trial, brought several months after judgment. The motion was based on CR 60(b)(3) and (4),[1] concerning relief from judgment. We hold the trial court erred in not granting a new trial based on Cessna's misconduct.

This issue centers around a test which the NTSB ordered Cessna to perform at its plant on January 24, 1979. The

---

[1] "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . .

"(3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);

"(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party".

NTSB sent the FAA a letter in August 1979, summarizing the January tests, and delineating a perceived fuel vapor problem which would cause the engine to die approximately 10 minutes after a different fuel tank had been selected. The letter dealt with the "200 series"; Cessna alleges the test was limited to the 210 model. A Cessna fuel selector valve was used, rather than a Sedco valve. Neither the fact of the tests nor the letter was disclosed to Taylor prior to trial. Taylor's counsel "happened" to find out about them in 1980. Taylor contends pretrial disclosure of the test would have changed the entire focus and theory of his case from the fuel selector valve to defective design of the fuel lines.

Taylor had submitted continuing pretrial interrogatories to Cessna, including:

> 10. Has CESSNA AIRCRAFT COMPANY, INC. received any complaints regarding either manufacturing defects or design defects in any SEDCO fuel selector valves or fuel systems similar to the one which was installed in the aircraft of JOHN ALEXANDER?
>
> 11. If the answer to the above question is yes, please state the names and addresses of all such individuals making such complaints and the reasons for their complaints.
> . . .
> 19. Have there been any tests run at Cessna Aircraft Company regarding the fuel flow for either the 206 or 210 series aircraft which are equipped with the Sedco three position selector valve?
>
> 20. If such tests have been conducted, without a Motion to Produce, would you please attach copies of the results of those tests.

The documents produced were copies of results of tests performed on the Sedco 3–position fuel selector valve.

In addition, Taylor had issued subpoenas duces tecum on January 31, 1979, to several Cessna employees, requesting them to bring to depositions scheduled for mid–February several items, including:

> Any and all written information, memos, or notes in your possession relating to the fuel system used in the

Model TU 205 F [*sic*] or 210 aircraft which in any way refers to an alternate fuel system or modification of the fuel system and not previously furnished in this case.

On February 7, 1979, the court ordered Cessna to comply with the subpoenas. Taylor later determined at least two of the employees deposed in February were present at the January test. Yet they produced no information on it, either when they were deposed or later.

The trial court expressly refused to find any fraud, misconduct or misrepresentation by Cessna. The court found Cessna's conduct "incorrect but not unreasonable". The court apparently believed Cessna could reasonably have interpreted Taylor's discovery to be limited to documents concerning the mismilled Sedco valve, or those specifically concerning the 206 model.

Taylor vigorously argues the tests produced a new theory for the cause of the accident, *i.e.,* Mr. Alexander followed standard procedure and switched tanks when he radioed the control tower he was beginning his approach, approximately 10 minutes before the accident; vapor then built up for 10 minutes, the engine stalled, and Mr. Alexander was not able to restart it in time to avoid the power lines. Taylor's experts submitted affidavits stating the test results would have changed their opinions.

Cessna just as vigorously argues the true cause of the accident was pilot error, *i.e.,* (1) failing to switch to the fuller tank upon each takeoff and landing and then selecting the fuller tank only when the engine stalled, and/or (2) bringing the plane in too low. Cessna further argues the test was specifically of a 210 model, not a 206 or the 200 series in general. It contends the fuel systems are different.

The discovery rules are intended to "'make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Gammon v. Clark Equip. Co.,* 38 Wn. App. 274, 279–80, 686 P.2d 1102 (quoting *United States v. Procter & Gamble Co.,* 356 U.S. 677, 683, 2 L. Ed. 2d 1077, 78 S. Ct. 983 (1958)), *review granted on other issues,* 103 Wn.2d

1004 (1984). A violation of the discovery rules is willful if done without a reasonable excuse. *Gammon v. Clark Equip. Co., supra* at 280. While the sanctions to be imposed are a matter of trial court discretion, this discretion is not unbridled. Imposition of unduly light sanctions will only encourage litigants to employ tactics of evasion and delay, in contravention of the spirit and letter of the discovery rules. *Gammon v. Clark Equip. Co., supra* at 282; *Lampard v. Roth,* 38 Wn. App. 198, 202, 684 P.2d 1353 (1984).

The trial court's finding Cessna's conduct was reasonable is not supported by the evidence. We emphasize in particular the subpoenas duces tecum which requested any and all information in Cessna's possession relating to fuel system modification or alteration in the 210 aircraft, and made no mention of the Sedco valve. If, as Cessna claims, the test was of a 210 model and not the 200 series in general, information regarding it clearly fell within Taylor's request. Whether a 206 model or a Sedco fuel selector valve was involved is immaterial; all information reasonably calculated to lead to admissible evidence is discoverable. CR 26(b)(1). Under any fair reading of Taylor's discovery requests, we are constrained to disagree with the trial court's finding of reasonableness.

It is not for the defense to unilaterally decide what is relevant. *Gammon v. Clark Equip. Co., supra.* Cessna's remedy was to seek a protective order, not to withhold discoverable material based upon its interpretation of what Taylor's theories were. CR 26(c); *Gammon v. Clark Equip. Co., supra. Accord, Rozier v. Ford Motor Co.,* 573 F.2d 1332, 50 A.L.R. Fed. 914 (5th Cir. 1978).

A new trial based upon the prevailing party's misconduct does not require a showing the new evidence would have materially affected the outcome of the first trial. CR 60(b)(4). *See Rozier v. Ford Motor Co., supra* (interpreting identical federal rule).

[I]t cannot be stated with certainty that all of this would have changed the result of the case. But, as said by the Supreme Court, a litigant who has engaged in misconduct

is not entitled to "the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent." Minneapolis, St. Paul & S.S. Marie Ry. Co. v. Moquin, 1931, 283 U.S. 520, 521–522, 51 S.Ct. 501, 502, 75 L.Ed. 1243.

*Seaboldt v. Pennsylvania R.R.,* 290 F.2d 296, 300 (3d Cir. 1961). *Accord, Gammon v. Clark Equip. Co., supra; Rozier v. Ford Motor Co., supra.*

The trial court also denied a new trial based on newly discovered evidence, CR 60(b)(3), finding the tests were not material to the issues litigated and would not have affected the outcome of the trial. In light of our holding Taylor is entitled to a new trial under CR 60(b)(4), we do not reach this issue. We note, however, Taylor could not litigate issues he did not know existed; we do not condone Cessna's actions which deprived Taylor of an alternate theory upon which to argue liability.

Taylor argues the trial court should have ordered additional discovery at Cessna's expense, or an evidentiary hearing before rendering its decision on the second new trial motion. The voluminous record in this case has been continuously growing since the accident occurred in 1976, and contains over 2,000 pages of trial transcript, depositions, exhibits, legal memoranda, motions and rulings. The trial court had more than enough information before it to render a decision.

Taylor discusses sanctions at length, arguing they are mandatory in a discovery violation case. We find the trial court's award of $4,857.06 in connection with the second new trial motion to be reasonable. CR 37. We believe that sum and the expense to Cessna of a new trial to be a sufficient sanction; Taylor's request for attorney fees on appeal is denied and he shall pay his own expenses on retrial, absent some further misconduct by Cessna.

We also decline Taylor's suggestion we order a directed verdict of liability against Cessna because Mrs. Alexander had the plane destroyed after the first trial. The plane's absence impacts Taylor and Cessna equally, and we believe

838

there is sufficient conflicting evidence to warrant a new trial.

Cessna cross–appeals the dismissal of its cross claim, claiming it is entitled to contribution from Mr. Alexander's estate under RCW 4.22.040. The trial occurred in November 1979; RCW 4.22.040 does not apply if trial took place before July 26, 1981. RCW 4.22.920. There was no error.

The judgment is reversed and case remanded for a new trial.

McINTURFF, A.C.J., and THOMPSON, J., concur.

Reconsideration denied March 19, 1985.

Review denied by Supreme Court May 24, 1985.