# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

REBECCA A. RUFIN, an individual, )
                                   )
            Appellant, )
                                   )
            v. )
                                   )
CITY OF SEATTLE, a municipality, and )
JORGE CARRASCO, an individual, )
                                   )
            Respondents. )

No. 76091-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 21, 2017

APPELWICK, J. — Rufin appeals the denial of her CR 60(b)(4) motion to vacate judgment in favor of the City of Seattle in her employment retaliation lawsuit. The motion was based on an e-mail produced in a later lawsuit under the Public Records Act.[1] Rufin claims the e-mail contradicts witness testimony at the retaliation trial and, though responsive to her discovery requests, it was not produced in that lawsuit. She argues that the court misapplied the law and made findings not supported by the evidence. We affirm.

## FACTS

Rebecca Rufin worked for Seattle City Light from 1990 through 2006. <u>Rufin v. City of Seattle</u>, No. 72012-1-I, slip op. at 2 (Wash Ct. App. Aug. 17, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/720121.pdf (<u>Rufin</u> I). While there and shortly after leaving, she was involved as a potential witness in an investigation and lawsuit related to gender discrimination allegations by City Light employees against Jorge Carrasco. <u>Id.</u> at 2, 8-9. Carrasco is City Light's general manager and chief executive officer. <u>Id.</u> at 2.

---

[1] Chapter 42.56 RCW.

In 2011 and 2012, Rufin applied for an open position as a civil and mechanical engineer manager (CME) at City Light. Id. at 2-3. She first applied in August 2011. Id. at 3. She was interviewed three times for the position. Id. Ultimately, City Light terminated the hiring process without filling the position. Id.

In April 2012, City Light relisted the CME position. Id. Rufin saw the opening. Id. On April 10, 2012, she e-mailed Mike Haynes, who was the hiring manager for the CME position. She asked, "So Mike, is there any point in applying for this? I still don't understand how I failed to measure up with the last lengthy process." On April 19, Haynes responded, informing Rufin, "As you know, this is an active process and I need to divert you to HR for questions. Susan McClure is running this process." Rufin reapplied for the CME position. Rufin I, slip op. at 3.

Then, on June 11, 2012, Rufin e-mailed Carrasco about her applications for the CME position. She informed him that she applied for the position in August 2011 and was turned down after three interviews. She noted that City Light had begun a new selection process for the position. Rufin said, "I cannot help but wonder why I was turned down for the position with the prior hiring process." Carrasco replied, copying the human resources officer DaVonna Johnson. Carrasco told Rufin that he was not involved with the selection process, but that Johnson would look into the situation.

Meanwhile, Haynes spoke with Heather Hartley, who was a personnel specialist in City Light's Talent Acquisition Unit. Hartley determined that under City Light policy, a candidate who has previously been considered for a position will not

be considered again.[2] On June 12, 2012, Hartley sent Rufin a letter to inform her that they would not be considering Rufin's application. Hartley's supervisor, Gary Maehara, approved the letter before she sent it.

After receiving this rejection letter, Rufin contacted Johnson to set up a meeting. They met on June 20, 2012. Rufin sought to understand why she was turned down for the CME position. Johnson communicated to Rufin that when she left City Light in 2006, she conveyed her dissatisfaction in a divisive manner. And, Johnson noted that Rufin's interest in rejoining City Light seemed focused on her own personal gain, rather than how she could benefit the utility.

Rufin filed a complaint against City Light and its director, Carrasco, under chapter 49.60 RCW. Rufin I, slip op. at 3. She claimed gender discrimination and retaliation for taking part in a protected activity. Id. Rufin alleged that her participation in the earlier investigations was a substantial factor in City Light's decision not to hire her for the CME position. In connection with the retaliation lawsuit, Rufin made numerous Public Records Act (PRA) requests. Rufin v. City of Seattle, 199 Wn. App. 348, 352-53, ___ P.2d ___ (2017) (Rufin II).

Rufin served interrogatories and requests for production on the City of Seattle (City). She requested all e-mails or communications to or from City Light employees Haynes, Johnson, or Darnell Cola[3] that referred to Rufin. The City

---

[2] The record does not contain an ordinance or formal policy statement as to this practice.

[3] Cola was a member of the hiring team who interviewed Rufin for the CME position.

3

objected to these requests as overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Rufin moved to compel the City to respond to her first set of interrogatories and requests for production. On July 3, 2013, the trial court granted Rufin's motion to compel. It ordered the City to search for e-mails relating to Rufin "in places they are most logically likely to reside and places easily accessible and searchable, including personnel files, any paper files, [and] any electronic files" maintained by Carrasco, Johnson, Haynes, and Cola.

Rufin's retaliation claim was tried before a jury in April 2014. Her theory at trial was that Carrasco had intervened in the hiring process to make sure Haynes did not hire Rufin, due to her allegations of gender discrimination by Carrasco in 2006. The jury found in favor of City Light. Rufin I, slip op. at 3. This court affirmed the verdict in an unpublished opinion. Id. at 1.

In November 2014, Rufin filed a claim alleging PRA violations. Rufin II, 199 Wn. App. at 353. In discovery, she requested e-mails mentioning her name that may exist among public disclosure officers. Id. In response to this request, the City produced the e-mail that Rufin now refers to as a "smoking gun." Id. This e-mail related to Rufin's April 10, 2012, e-mail to Haynes about the relisting of the CME position. On April 18, 2012, Haynes forwarded Rufin's e-mail to Maehara, Johnson, and Steve Kern, Haynes's supervisor, with the message, "I am just getting caught up after being out for a week. I have not replied."

On January 8, 2016, Rufin filed a CR 60(b)(4) motion to vacate the judgment in the retaliation case. She asserted that the City withheld Haynes's April 18, 2012

e-mail, which could have changed the outcome of the case. Rufin argued that the e-mail directly contradicted the version of events that defense witnesses gave in declarations, depositions, and at trial. Specifically, she contended that the e-mail showed that Johnson and Maehara were notified of Rufin's complaint about her nonselection during the 2011 hiring process, whereas the witnesses claimed that Johnson had no information about Rufin's application for the job.

The trial court denied Rufin's CR 60(B)(4) motion to vacate the judgment. The court found that Rufin did not prove by clear, cogent, and convincing evidence that the City committed fraud, misrepresentation, or misconduct in the retaliation lawsuit. And, the trial court denied Rufin's CR 37 motion for a default judgment or a new trial. It found that the City did not willfully or deliberately violate the discovery rules or the court's discovery order.

Rufin appeals.

## DISCUSSION

Rufin argues that the trial court erred in denying her CR 60(b)(4) motion. She contends that the City committed misconduct by failing to produce the April 18, 2012 e-mail in the retaliation lawsuit and by instituting an automatic deletion policy that resulted in other copies of the e-mail being destroyed. She argues that the content of the e-mail revealed the City's misrepresentations at trial. And, she contends that under CR 37, harsh sanctions are warranted for the City's discovery violations.

CR 60(b)(4) provides that the court may relieve a party from a final judgment for "[f]raud (whether heretofore denominated intrinsic or extrinsic),

5

misrepresentation, or other misconduct of an adverse party." The party asserting that a judgment has been obtained through fraud, misrepresentation, or other misconduct has the burden of proving the assertion by clear and convincing evidence. Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989). It is immaterial whether the misrepresentation was willful or innocent, since the effect is the same. Id. at 371. The party requesting relief must show that the misconduct prevented a full and fair presentation of its case. Dalton v. State, 130 Wn. App. 653, 665, 124 P.3d 305 (2005).

We review a trial court's decision on a motion to vacate under CR 60(b) for an abuse of discretion. Mitchell v. Wash. State Inst. of Pub. Policy, 153 Wn. App. 803, 821, 225 P.3d 280 (2009). The trial court abuses its discretion only when there is a clear showing that the trial court's decision was manifestly unreasonable or based on untenable grounds or untenable reasons. Id.

Where the trial court's findings of fact are challenged, we review whether substantial evidence supports the findings. In re Marriage of Schweitzer, 132 Wn.2d 318, 329, 937 P.2d 1062 (1997). Where the standard of proof in the trial court is clear, cogent, and convincing evidence, substantial evidence must be "highly probable." Id.

I.    Misconduct

Rufin argues that the City committed misconduct by failing to produce the April 18, 2012 e-mail. Rufin alleges that the City had an affirmative duty to search Maehara's e-mail account for responsive records, yet failed to do so. And, she

contends that the City destroyed evidence of the April 18, 2012 e-mail through its automatic deletion policy.

The trial court found that while the City admitted it did not produce the April 18, 2012 e-mail and that e-mail was responsive to Rufin's discovery requests, this failure to produce did not constitute misconduct. It found that the City conducted a reasonable search for all responsive e-mails. It found that the paralegal who conducted the search had no reason to look in Maehara's account. And, the court found that although Maehara "could have and, perhaps should have, realized he had received e[-]mail correspondence relating to Rufin in April 2012, when he received copies of the discovery motion, his failure to remember does not prove fraud or intentional withholding of evidence by the City." The court also found that the City's retention policy did not constitute misconduct.

CR 26(g) pertains to responses to discovery requests. Under this rule, an attorney signing a response to a discovery request must certify that he or she has read the response and, after a reasonable inquiry, believes it is:

> (1) consistent with the discovery rules and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; (2) not interposed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had, the amount in controversy, and the importance of the issues at stake in the litigation.

Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 343, 858 P.2d 1054 (1993); see also CR 26(g). Whether the attorney performed a reasonable inquiry is determined by an objective standard. Fisons Corp., 122

7

Wn.2d at 343. An attorney's subjective belief or good faith alone is not enough to shield the attorney from sanctions.[4] Id.

Here, it is undisputed that the City failed to produce the April 18, 2012 e-mail, even though it was responsive both to Rufin's discovery requests and the trial court's discovery order. The e-mail was sent by Haynes to Johnson, Maehara, and Kern. It concerned Rufin's application for the CME position. Rufin's requests for production asked for every e-mail to or from Johnson, Haynes, and Cola regarding Rufin. The City objected to these requests as overly broad. Rufin moved to compel the City to respond. The trial court's discovery order narrowed these requests. It required the City to look for e-mails "in places they are most logically likely to reside." It specifically required the City to search the e-mail accounts and archives of Carrasco, Johnson, Haynes, and Cola. That search was executed. Yet, the City did not produce the April 18, 2012 e-mail.

Rufin asserts that the City should have known to search Maehara's e-mail account. She points to the fact that Maehara reviewed the letter that Hartley sent to Rufin to inform her that City Light would not be considering her second application. She also points to the fact that Maehara received copies of the documents in the retaliation litigation, and should have known that he possessed e-mails regarding Rufin.

---

[4] Rufin contends that the trial court failed to analyze whether the City's attorneys performed a "reasonable inquiry" in responding to Rufin's discovery requests. She contends that instead, the trial court required Rufin to show that the City had committed fraud or intentionally withheld evidence. But, the trial court's order does not support Rufin's contentions. The court specifically found that the City had performed a "reasonable search." We can discern no meaningful distinction between a "reasonable inquiry" and a "reasonable search."

8

Whether the City conducted a reasonable search for records was a factual question best resolved by the trial court. Several witnesses submitted sworn declarations about their responses to the trial court's order to compel. Assistant City Attorney Carolyn Boies Nitta stated in a declaration, "I did not direct that any document responsive to this Court's order be withheld from production; I am not aware of any such direction from anyone else; and I am aware of no withholding of any such document." She confirmed that she had no reason to believe that Maehara would have any responsive documents. Assistant City Attorney Erin Overbey stated in a declaration that she had no reason to believe that responsive documents would be contained in Maehara's e-mail account or archive. She further stated that Maehara's e-mail account would have been searched if she had reason to believe it contained responsive documents. And, she confirmed that she did not direct that any responsive document be withheld, and was not aware of any document that was withheld.

Paralegal DC Bryan, who searched for responsive documents, also submitted a declaration. He stated that he searched for documents "in the places that such documents most logically would be kept." He searched Johnson's, Haynes's, Carrasco's, and Cola's e-mail accounts and archives. Bryan did not search Maehara's e-mail accounts or archives, because he had no reason to believe responsive documents would be found there. Bryan further confirmed that he "conducted the above searches in good faith, and all responsive documents returned from those searches were produced to Plaintiff." No one instructed him

to withhold records, and he did not know of any records that were withheld from Rufin.

Hartley did not testify that Maehara had any involvement in Rufin's hiring process other than approving the June 12, 2012 letter. No one did. And, Rufin presented no evidence that Maehara saw the April 18, 2012 e-mail. She did not show that he remembered receiving this e-mail. Haynes stated in a deposition that he did not believe that he spoke directly to Maehara about Rufin's concerns. And, multiple City employees testified that they had no reason to look for responsive documents in Maehara's accounts. On this evidence the trial court could find that the City conducted a reasonable search for responsive e-mails and that it would have produced the e-mail in response to Rufin's discovery requests, if it had found it. These facts are do not provide clear and convincing evidence of misconduct.

Rufin also asserts that the City committed misconduct by destroying the copies of the April 18, 2012 e-mail that resided in Haynes's and Johnson's e-mail accounts. She contends that the destruction of this evidence constituted misconduct. And, she argues that the trial court incorrectly applied the law of spoliation.

Spoliation is " '[t]he intentional destruction of evidence.' " Henderson v. Tyrrell, 80 Wn. App. 592, 605, 910 P.2d 522 (1996) (alteration in original) (quoting BLACK'S LAW DICTIONARY 1401 (6th ed. 1990). To determine when spoliation requires a sanction, the trial court weighs "(1) the potential importance or relevance of the missing evidence; and (2) the culpability or fault of the adverse party."

Homeworks Constr., Inc. v. Wells, 133 Wn. App. 892, 899, 138 P.3d 654 (2006). The court then uses its discretion to decide upon an appropriate sanction. Id.

For a party to be culpable, "the party must do more than disregard the importance of the evidence; the party must also have a duty to preserve the evidence." Id. at 900. Whether a duty to preserve evidence exists is a question of law reviewed de novo. Cook v. Tarbet Logging, Inc., 190 Wn. App. 448, 461, 360 P.3d 855 (2015). No general duty to preserve evidence exists in Washington. See id. at 470. But, other sources may create a duty to preserve evidence. Homeworks, 133 Wn. App. at 901; Henderson, 80 Wn. App. at 610. Consequently, a party's negligent failure to preserve evidence relevant to foreseeable litigation is not sanctionable spoliation. Cook, 190 Wn. App. at 464. Instead, in assessing fault courts examine whether the party acted in bad faith or conscious disregard for the importance of the evidence. Id.

Rufin alleges that under RCW 40.14.070(2)(a), the City had a statutory duty to preserve the April 18, 2012 e-mail. RCW 40.14.070(2)(a) states, "Except as otherwise provided by law, no public records shall be destroyed until approved for destruction by the local records committee." The Local Government Common Records Retention Schedule applies to public records of local government agencies. It sets out retention schedules for different categories of records.

Rufin contends that the April 18, 2012 e-mail fits under two categories: non-executive communications or recruitment files. The first category, non-executive communications, applies to "internal and external communications to or from employees (includes contractors and volunteers) that are made or received in

11

connection with the transaction of public business." These records must be retained for two years. The second category, recruitment files, applies to documents from the "recruitment and selection process for each advertised position, including newspaper announcement, job description, working papers/notes, applicant list, interview questions and notes, selection documents, and employee applications." These records must be retained for three years.

The April 18, 2012 e-mail does not appear to meet either definition. A non-executive communication must be "made or received in connection with the transaction of public business." But, the April 18, 2012 e-mail did not purport to transact business with the public. It was a forwarded e-mail from Haynes to Johnson, Maehara, and Kern. It did not provide or solicit advice regarding Rufin's concerns. Nor does the e-mail qualify as a recruitment file. The message informed other personnel of a former candidate for employment's question about a job posting. It contained no information about Rufin's recruitment application or hiring process. And, it did not reveal any information about the decision not to hire Rufin.

Rufin cites no case law interpreting RCW 40.14.070(2)(a) or these retention schedules in the context of a spoliation claim. We cannot conclude that the trial court abused its discretion in concluding no sanctionable spoliation occurred here. The City's failure to retain copies of the e-mails under its retention policy does not provide clear and convincing evidence of misconduct.

Therefore, the City did not commit misconduct for purposes of CR 60(b)(4) by failing to produce the April 18, 2012 e-mail.

II.  Misrepresentation

Rufin alleges that the content of the withheld e-mail demonstrates that the City misrepresented facts in the retaliation lawsuit.  She claims that the April 18, 2012 e-mail directly contradicts Johnson's testimony.  Specifically, Rufin points to Johnson's testimony that she was not involved in or aware of Rufin's CME application.

Rufin's misrepresentation argument relates to her communications with City Light employees in 2012 about the CME position.  After learning that the CME position had been reposted in April 2012, Rufin reached out to multiple individuals at City Light for more information about the previous hiring process.  She e-mailed Haynes on April 10, 2012 to ask whether she should reapply for the position.  Haynes responded on April 19, 2012.  He told Rufin that he could not discuss the active hiring process, and referred her to McClure.

On June 11, 2012, Rufin e-mailed Carrasco directly.  She asked why she was turned down for the position in August 2011, given the fact that City Light did not fill the position.  Carrasco responded that day, and copied Johnson.  He directed Johnson to look into Rufin's situation.

Meanwhile, Haynes spoke to Hartley.  On June 12, 2012, one day after Rufin's correspondence with Carrasco, Hartley sent Rufin a letter.  The letter informed Rufin that City Light would not be considering her application for the CME position.  Hartley believed that the letter was consistent with City Light's policy that a candidate who has previously been considered for a position will not be

13

considered again for the same position. On June 20, 2012, Rufin met with Johnson to discuss Rufin's concerns with the previous hiring process.

Rufin asserts that the April 18, 2012 e-mail contradicts several facts elicited at the discrimination trial. First, Johnson testified that she did not speak to Haynes about Rufin or her candidacy for the CME position. Second, Johnson stated that she had no information about the hiring process for this position until she received the June 11, 2012 e-mail from Carrasco. Third, Johnson stated that before June 11, 2012, she did not know that Rufin was being considered in another hiring process. Fourth, in a declaration in response to Rufin's motion to compel discovery, Johnson stated that all of her responsive e-mails had already been provided to Rufin.

The substance of the April 18, 2012 e-mail does not contradict these statements. First, the e-mail establishes that Haynes forwarded Rufin's question about the 2012 opening and concerns about "the last lengthy process" to Johnson, as well as Maehara and Kern. Assuming that the April 18, 2012 e-mail was received by Johnson, without more, it does not show that Johnson read the e-mail. Johnson testified in a later deposition that she did not remember receiving the e-mail or discussing it with Haynes. Nor does the fact of the e-mail establish that Johnson ever spoke with Haynes about Rufin in the 2011 process.

Second, the e-mail does not show that Johnson knew about Rufin's 2011 candidacy for the CME position while it was ongoing. Rufin referred only to "the last lengthy process" in her original e-mail to Haynes. She did not specify what that lengthy process entailed.

14

Third, the e-mail does not establish that Johnson knew that Rufin had applied in 2012 for the CME position. Rufin's question in the e-mail was, "[I]s there any point in applying for this?" In fact Rufin had not yet applied for the position. To the extent Rufin means Johnson knew of her interest in applying, the e-mail does not contradict Johnson's trial testimony. Rufin had evidence at trial that she met with Johnson after her e-mail to Carrasco.

Fourth, the e-mail was a responsive document that the City did not produce. But, Johnson spoke about the April 18, 2012 e-mail in her deposition on October 21, 2015. She testified that she did not remember receiving the April 18 e-mail. She stated that she did not remember having any conversation with Haynes about the e-mail. No e-mail responding to Haynes's forwarded e-mail was ever identified. Therefore, while Johnson's statement that she had already provided all responsive e-mails was factually untrue, she believed it to be true.

The April 18, 2012 e-mail does not provide clear and convincing evidence of misrepresentation by the City. We hold that the trial court did not err in finding that the City did not commit misconduct or misrepresentation as is necessary to vacate a judgment under CR 60(b)(4). Therefore, we conclude that the trial court did not abuse its discretion in denying Rufin's CR 60(b)(4) motion.

III. CR 37 Sanctions

Rufin contends that CR 37 provided a basis for the trial court to vacate the judgment and enter a default judgment in her favor, or alternatively order a new trial. She asserts that under CR 37, the trial court should have determined whether the City had a reasonable excuse for its failure to comply with the court's order to

produce documents. She also argues that the trial court erred in discussing Rufin's opportunities to investigate the issue before trial.

Under CR 37(b), the trial court has discretion to impose sanctions for a violation of the discovery rules. The discovery rules are intended to make trial a fair contest, with the issues and facts disclosed to the extent possible. Taylor v. Cessna Aircraft Co., Inc., 39 Wn. App. 828, 835, 696 P.2d 28 (1985). The trial court's discretion to impose sanctions for discovery violations must be exercised in such a way as to discourage litigants from employing tactics of evasion and delay. Id. at 836. We review discovery sanctions imposed under CR 37 for an abuse of discretion. Roberson v. Perez, 123 Wn. App. 320, 332-33, 96 P.3d 420 (2004). The trial court has wide latitude in fashioning an appropriate sanction for discovery violations. Id. at 333.

The trial court is authorized to impose harsh sanctions, such as a default judgment, for the failure to comply with a discovery order. CR 37(b)(2)(C). For the trial court to impose such a harsh sanction, the record must clearly show: "(1) one party willfully or deliberately violated the discovery rules and orders, (2) the opposing party was substantially prejudiced in its ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would have sufficed." Magaña v. Hyundai Motor Am., 167 Wn.2d 570, 584, 220 P.3d 191 (2009). A violation is willful if done without a reasonable excuse. Taylor, 39 Wn. App. at 836.

Here, the trial court denied Rufin's CR 37 motion for a default judgment or a new trial. It found that the City did not willfully or deliberately violate the discovery rules or the court's discovery order. This was so, for two reasons. First, the court's

order compelling discovery did not require the City to search Maehara's archived e-mails, because Maehara had not been identified as someone who might have responsive documents. Second, Rufin knew of Maehara's involvement in the human resources department before trial, and she had ample opportunity to investigate this issue before trial.

Rufin argues that the trial court relied on an incorrect legal standard in its first reason. She contends that the trial court should have examined whether the City disregarded the court order without reasonable excuse or justification. She cites to Magaña and Taylor to support her argument.

In Magaña, a passenger in a 1996 Hyundai Accent was severely injured in a car accident. 167 Wn.2d at 576-77. He sued Hyundai, arguing his injuries were caused by a design defect in the car. Id. at 577. During discovery, Magaña requested Hyundai to produce any documents related to similar complaints or lawsuits, and to identify all Hyundai models with the same or similar design. Id. at 577-78. Magaña prevailed at trial, but due to an evidentiary error, the Court of Appeals remanded for a new trial. Id. at 578. Magaña asked Hyundai to update its responses to his discovery requests. Id. at 579. Ultimately, the trial court ordered Hyundai to produce all complaints involving a similar design. Id. at 580. After that, Hyundai produced numerous documents relating to such complaints, which it had not previously provided. Id. Magaña moved for a default judgment due to Hyundai's discovery violations. Id. The trial court imposed a default judgment against Hyundai due to the serious discovery violations Hyundai had committed. Id. at 581-82.

The Washington Supreme Court held that the trial court did not abuse its discretion in imposing such a severe sanction. Id. at 594. It noted that reasonable grounds and evidence in the record supported the trial court's finding that Hyundai willfully violated the discovery rules. Id. at 587. This was so, because Hyundai had failed to inform Magaña that there were multiple claims of similar failures, it falsely represented to Magaña that there were no claims involving this design, and it failed to supplement its incorrect responses. Id. at 585. And, Hyundai failed to search outside its legal department in responding to Magaña's requests. Id .

Similarly, in Taylor, the Court of Appeals reversed the trial court's denial of a motion for a new trial. 39 Wn. App. at 829. In that case, a plane crash killed all aboard, and the decedents' estates sued the fuel selector valve manufacturer. Id. at 829-30. At trial, the estates' theory was that the accident was caused by a faulty fuel selector valve. Id. at 830. The jury found in favor of the manufacturer. Id. at 830-31. The trial court denied the estates' motions for a new trial or relief from judgment. Id. at 831.

The Court of Appeals held that the trial court erred in not granting a new trial under CR 60(b)(4). Id. at 833. This was so, because the manufacturer failed to disclose tests that demonstrated a potential fuel vapor problem. Id. at 833-34. The manufacturer did not produce this information, because it interpreted the estates' discovery requests to be limited to documents about the specific valve or model at issue. Id. at 834-35. But, the Court of Appeals determined that information about the tests fell within the scope of the estates' discovery requests.

Id. at 836. Therefore, the manufacturer's withholding of this information was not reasonable. Id.

The trial court did not misapply Magaña and Taylor. It found that the City did not willfully or deliberately violate the discovery rules or the court's order. This is unlike Magaña and Taylor, where the defendants knew of the responsive documents and withheld them without a reasonable excuse. The City looked in the places where responsive documents were most likely to be found, including the e-mail accounts and archives of Carrasco, Haynes, Johnson, and Cola. It did not search Maehara's e-mail account or archive, but nothing in the record suggests that the City was aware of the e-mail and withheld it from Rufin. The trial court was satisfied that the City followed its order. Therefore, the trial court did not misapply the law.

Rufin also argues that the trial court erred in examining whether Rufin acted diligently. She points to Roberson to support this argument. In Roberson, several individuals who were accused of child sexual abuse sued the City of Wenatchee. 123 Wn. App. at 325. They claimed that the City negligently investigated the allegations of sexual abuse. Id. Juries returned verdicts in favor of the City. Id. at 327. Afterward, the plaintiffs moved to vacate the verdicts, arguing that the City had failed to produce documents in discovery which contained material evidence. Id. at 327-28. The trial court granted the motion, finding that the City had intentionally failed to produce material records that the plaintiffs had legitimately requested. Id. at 330. The court ordered a new trial as a remedy for violation of the discovery order. Id. at 332.

On appeal, the Court of Appeals rejected the City's argument that the plaintiffs did not exercise due diligence. Id. at 334. The Court of Appeals noted that "[d]iligence is not a consideration in determining whether a new trial is an appropriate remedy for a discovery violation." Id. at 334.

Roberson supports Rufin's contention that the trial court should not have considered her opportunities to investigate Maehara's involvement in deciding her CR 37 motion. But, we may affirm on any basis supported by the record. West v. Dep't of Licensing, 182 Wn. App. 500, 517, 331 P.3d 72 (2014). The trial court's other basis for the denial of the CR 37 motion is supported by the record.

The trial court properly applied the law in determining that the harsh sanctions of a default judgment or a new trial were not warranted. Therefore, we conclude that the trial court did not abuse its discretion in denying Rufin's CR 37 motion.

IV. Appellate Attorney Fees

Rufin requests attorney fees and costs on appeal. We deny Rufin's request, because she is not the prevailing party on appeal.

We affirm.

WE CONCUR: