FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2017 SEP -5 AM 9:17

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

REGINALD K. WREN and BRENDA M. )
WREN, husband and wife, )
          )
      Respondents, )
          )
  v. )
          )
TAMMY S. BLAKEY, an unmarried )
person, and FLYING T RANCH, )
INC., a Washington corporation, )
          )
      Appellants. )
_____ )

No. 75449-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 5, 2017

LEACH, J. — Tammy Blakey and Flying T Ranch Inc. (collectively Blakey) appeal the trial court's denial of a March 2016 motion to vacate an April 2013 judgment in favor of Reginald and Brenda Wren. Blakey claims that the Wrens' misconduct in withholding evidence entitles her to a new trial. Because the Wrens have shown that the withheld evidence does not help Blakey's case, any failure to produce it in discovery did not prevent Blakey from fully and fairly presenting her case. We affirm.

## FACTS

The Wrens and Blakey own adjacent parcels of real property in rural Snohomish County. Blakey acquired her parcel in 1989 at a sheriff's sale. She took possession of it in 1990. The Wrens acquired their parcel in 2004.

Since the 1930s, a barbed wire fence has separated the parcels. Over time, a hedgerow grew along this fence and engulfed it. The hedgerow was approximately 12 feet high and between 50 and 70 feet wide. The occupants of the property farmed each parcel up to the hedgerow.

Blakey testified that in 1990 she removed some of the hedgerow and repaired the fence at its original location. But before 2009, the hedgerow had grown back. In 2009, Blakely destroyed the hedgerow and built a new barbed wire fence. She again claimed that she had merely replaced the fence in the same location. The Wrens protested Blakey's construction, asserting that Blakey installed the new fence west of the boundary about 50 feet into the Wrens' property.

The Wrens sued Blakey for trespass and to quiet title to the disputed property. Blakey counterclaimed. She asserted she acquired title to the property east of the 2009 fence by adverse possession. After a bench trial, the court quieted title in the Wrens, finding that Blakey had failed to prove her adverse possession claim:

> The only evidence presented on the subject of possession of the land in the disputed area by anybody in the last fifty years was the 1990 incursion and fence destruction and replacement undertaken by the defendant. The area being then left to the blackberries, [Blakey's] activities do not amount to actual possession and [Blakey] has not begun to make out a case of adverse possession.

The court also found that Blakey had trespassed on the Wrens' property.[1] Finally, the court found that Blakey's destruction of the hedgerow and installation of a barbed wire fence injured the property and prevented the Wrens from continuing to use their land to pasture horses because the horses might injure themselves on the wire. The court awarded the Wrens $180,017.84. This sum included treble damages under RCW 4.24.630 and attorney fees and litigation costs.

In June 2013, Blakey moved for reconsideration. The trial court denied that motion.

Blakey appealed. We affirmed the trial court's decision that Blakey failed to establish a claim of adverse possession:

> Here, there was substantial evidence that the property owners, present and former, used the land only up to the hedgerow. Blakey does not challenge finding of fact 12 describing the hedgerow as 12 feet high and 70 feet wide. A photograph exhibit showed the fence line visible in 1983. Thus, it is clear that Blakey could not have exerted the requisite dominion and control required to establish adverse possession.[2]

In September 2014, Blakey filed a CR 60(b) motion, which the trial court also denied.

---

[1] The court observed that "the defendant's statement that she owned the property by adverse possession amounts to an acknowledgement that she did not have rightful possession of the property."

[2] Wren v. Blakey, No. 70691-8-I, slip op. at 9 (Wash. Ct. App. Aug. 11, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/706918.pdf.

In January 2015, Blakey sued the Wrens after they built a new fence on the section line described as the common boundary in the parties' deeds. Blakey alleged that the common boundary was the "historic fence" and not the section line. The court found that res judicata barred her action and dismissed it. It also found the lawsuit frivolous and awarded the Wrens attorney fees.

In the 2015 action, the court ordered the Wrens to produce discovery and sanctioned them for discovery violations. To comply with the order, the Wrens delivered seven photographs of the fence and hedgerow taken in 2009. Blakey claims that the Wrens withheld two aerial photographs taken in May 2009 and August 2011.

In March 2016, relying on these photographs and the Wrens' failure to turn them over, Blakey moved to vacate the judgment against her under CR 60(b)(4). The trial court denied Blakey's motion. It awarded the Wrens attorney fees and costs and prohibited Blakey from filing a suit against the Wrens or their attorneys arising out of or related to the same facts or cause of action without first seeking permission of the court.

Blakey appeals.

## ANALYSIS

### CR 60(b)

First, Blakey challenges the trial court's denial of her motion to vacate. We review a superior court's decision on a CR 60(b) motion for manifest abuse of discretion.[3] A superior court abuses its discretion if it makes a manifestly unreasonable decision or bases that decision on untenable grounds or untenable reasons.[4]

Blakey asked for relief under CR 60(b)(4), which provides,

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
>     . . . .
>
>         (4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

"The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect."[5] To obtain relief, "the fraudulent conduct or

---

[3] In re Guardianship of Adamec, 100 Wn.2d 166, 173, 667 P.2d 1085 (1983).

[4] In re Schuoler, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986).

[5] Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989).

misrepresentation must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting [her] case or defense."[6]

Blakey is not entitled to relief because she received a full and fair hearing on all issues. The crux of Blakey's argument is that the Wrens wrongfully withheld evidence that shows the original location of the fence and thus establishes her adverse possession claim. While discovery violations can constitute misconduct for purposes of CR 60(b)(4) relief, a discovery violation alone does not warrant vacation of judgment.[7]

Our decision in Peoples State Bank v. Hickey[8] is instructive. In Hickey, we found that Peoples had misrepresented the status of the lien on Hickey's property but still refused to vacate the judgment.[9] We explained,

> Although Peoples misrepresented the status of Hickey's lien, there is no connection between the bank's misrepresentation and Hickey's failure to respond to the complaint or employ an attorney. There is no evidence that Hickey relied on the misrepresentation or was misled by People's statements in the complaint. . . . The misrepresentation having nothing to do with her failure to respond to the summons and complaint, Hickey cannot meet the requirement that the misrepresentation must have operated to prevent her from fully and fairly presenting her case.[10]

---

[6] Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990) (emphasis omitted) (citing Hickey, 55 Wn. App. at 372).

[7] Roberson v. Perez, 123 Wn. App. 320, 332-33, 96 P.3d 420 (2004); Hickey, 55 Wn. App. at 371.

[8] 55 Wn. App. 367, 777 P.2d 1056 (1989).

[9] Hickey, 55 Wn. App. at 371.

[10] Hickey, 55 Wn. App. at 372.

This case is like <u>Hickey</u> because the identified misconduct is harmless and does not support a motion to vacate.

Having the missing photographs would not have helped Blakey prove the unproven element of her adverse possession claim. To establish adverse possession, Blakey had to show that she possessed the disputed property for at least 10 years in a manner that is "'(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile.'"[11] "The ultimate test is the exercise of dominion over the land in a manner consistent with actions a true owner would take."[12] Blakey asserts that the withheld photographs show the location of the original fence and establish that she did not construct the 2009 fence in a new location. But construction of the 2009 fence does not help establish Blakey's claim for two reasons. First, after 1990 Blakey allowed the hedgerow to grow back and did not show occupation up to this fence. Second, 10 years did not elapse between the construction of this fence and the start of Wrens' lawsuit to quiet title.

The trial court explained why the location of the fence does not matter in its memorandum decision:

---

[11] <u>Gorman v. City of Woodinville</u>, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012) (quoting <u>ITT Rayonier, Inc. v. Bell</u>, 112 Wn.2d 754, 757, 774 P.2d 6 (1989)); <u>Anderson v. Hudak</u>, 80 Wn. App. 398, 401, 907 P.2d 305 (1995).

[12] <u>ITT Rayonier</u>, 112 Wn.2d at 759.

> The Court concludes that this is not a case about a historical fence that either is or is not on a boundary line. It is about a 2009 fence that was placed west of the true boundary line, and a disputed area to the east of the fence and to the west of the boundary line. The issue is a matter of whether the plaintiff adversely possessed the disputed area or did not. And the Court concludes she did not.
>
> It would make no difference if the issue were framed as the defense now frames it. Even if the 2009 fence had been placed on the same line as the historic fence, and each fence stood several feet to the west of the true boundary, the defendant would still have to show she adversely possessed the area between her fence and the true boundary. She did not show this either.

We agree that anything the photographs show about the location of past fences would not cure the deficiencies in Blakey's evidence about her adverse possession claim.

Blakey also claims that the photographs show that she did not destroy the hedgerow on the Wrens' side of the fence. This matters because the trial court based its award of damages on its finding that "[t]he plaintiffs keep horses, and horses are apt to be injured on barbed wire." The court reasoned that "[b]ecause the land in the disputed area formerly contained livestock and, following the destruction of the hedgerow, it no longer can, the land has been injured." Blakey suggests that if she did not destroy the hedgerow, then the Wrens' horses were not exposed to the danger of the barbed wire fence, and the award of damages was incorrect. The Wrens respond that the photographs show both that some portions of the hedgerow remain and that gaps exist in it, exposing their horses to barbed wire. The photographs do show that some of the hedgerow was

-8-

removed, exposing the barbed wire. The photographs do not help Blakey's case on the issue of damages.

Blakey asserts that she does not need to show that the photographs would have affected the trial's outcome. We agree that CR 60(b)(4) does not require showing that the misconduct did affect the outcome of the trial.[13] But the Wrens have the opportunity to show that their discovery violations did not deprive Blakey of a fair trial. They have met this burden.

We distinguish the cases Blakey relies on for comparison. First, she cites Taylor v. Cessna Aircraft Co.,[14] in which a jury found that Cessna was not liable for a plane crash. Division Three reversed the trial court's decision denying a new trial based on Cessna's misconduct in withholding evidence.[15] Taylor asserted that the undisclosed evidence would have supported an entirely new theory about the cause of the plane crash.[16] But, unlike Taylor, here the evidence relates only to theories that Blakey has already tried and is not relevant

___

[13] Taylor v. Cessna Aircraft Co., 39 Wn. App. 828, 836, 696 P.2d 28 (1985) ("A new trial based upon the prevailing party's misconduct does not require a showing the new evidence would have materially affected the outcome of the first trial."); see also Roberson, 123 Wn. App. at 336 (comparing the materiality requirement for newly acquired evidence (CR 60(b)(3) and misconduct (CR 60(b)(4)).

[14] 39 Wn. App. 828, 830-31, 696 P.2d 28 (1985).

[15] Taylor, 39 Wn. App. at 833.

[16] Taylor, 39 Wn. App. at 835.

to the element she failed to prove, so its unavailability did not harm Blakey's case.

In <u>Roberson v. Perez</u>,[17] Division Three affirmed the trial court's decision to grant a new trial because, although the moving party did not prove that a discovery violation changed the case's outcome, the violation was "substantial" and the withheld files were material to the plaintiffs' fair presentation of the case. As explained above, here the withheld evidence was not material and its absence did not affect a fair presentation of Blakey's case.

Blakey also claims that the trial court should have concluded as a matter of law that based on the new photographic evidence, she established ownership of the property through adverse possession.[18] Again, the location of past fences makes no difference in her adverse possession claim. The record contains insufficient evidence about possession. Further, courts may not grant affirmative relief—like a finding that Blakey established her adverse possession claim—in a CR 60(b) order.[19]

The trial court properly denied Blakey's CR 60(b) motion.

---

[17] 123 Wn. App. 320, 336, 96 P.3d 420 (2004).

[18] Blakey also claims that she has met the elements of mutual recognition and acquiescence. But she did not properly raise that claim, so we do not consider any arguments related to it.

[19] <u>Geonerco, Inc. v. Grand Ridge Props. IV, LLC</u>, 159 Wn. App. 536, 542, 248 P.3d 1047 (2011).

*Prefiling Restrictions*

Next, Blakey challenges the trial court's imposition of restrictions on Blakey's ability to file future claims against the Wrens.

Washington courts have the power to "provide for the orderly conduct of proceedings before it or its officers."[20] Thus, courts have discretion to "place reasonable restrictions on any litigant who abuses the judicial process."[21] For instance, "trial courts have the authority to enjoin a party from engaging in litigation upon a 'specific and detailed showing of a pattern of abusive and frivolous litigation.'"[22] We review a trial court order limiting a party's access to the court for abuse of discretion.[23]

Here, the trial court found that Blakey's "dogged pursuit of claims that have been rejected on numerous occasions is an abuse of the judicial system." It concluded that Blakey's "attempts to relitigate the issues decided in this case, either at the original trial, in the subsequent post-trial motions, or in the appeal of the decisions rendered, constitute [a] pattern of abusive and frivolous litigation." The court noted that the assessment of more than $120,000 in attorney fees against Blakey had not deterred her from repeatedly asserting the same claim.

---

[20] RCW 2.28.010(3).
[21] Yurtis v. Phipps, 143 Wn. App. 680, 693, 181 P.3d 849 (2008).
[22] Yurtis, 143 Wn. App. at 693 (quoting Whatcom County v. Kane, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981)).
[23] Bay v. Jensen, 147 Wn. App. 641, 657, 196 P.3d 753 (2008).

-11-

Thus, the court restricted Blakey from filing a suit against the Wrens or their attorneys "arising out of or related to the same facts or cause of action as those herein . . . without first seeking permission of the court." Given Blakey's repeated attempts to litigate her adverse possession claim, the trial court did not abuse its discretion by imposing this restriction.

*Discovery Sanctions*

Blakey contends that the trial court abused its discretion by failing to sanction the Wrens for their discovery violation. She asserts that CR 26 requires sanctions.[24] But the court already sanctioned the Wrens for failing to produce the photographs in the second action. The court did not abuse its discretion when it declined to award Blakey additional sanctions.[25]

*Attorney Fees*

The Wrens ask the court to award attorney fees under RCW 4.24.630 and RAP 18.1. RAP 18.1 allows the Court of Appeals to award attorney fees on appeal when applicable law authorizes them. RCW 4.24.630 states that a trespasser is liable for reasonable attorney fees. We grant the Wrens' request for attorney fees subject to their compliance with RAP 18.1.

---

[24] Carlson v. Lake Chelan Cmty. Hosp., 116 Wn. App. 718, 737, 75 P.3d 533 (2003).

[25] Even if Blakey were correct that the Wrens should be sanctioned again for essentially the same discovery violation, she may not seek that relief in a CR 60(b) motion. Geonerco, 159 Wn. App. at 542 (holding that courts may not grant affirmative relief under CR 60(b)).

Blakey also seeks attorney fees but because she does not prevail, we deny her request.

## CONCLUSION

Because any failure by the Wrens to produce photographs did not harm Blakey's ability to present her case, the trial court did not abuse its discretion by denying CR 60(b) relief. And in light of Blakey's voluminous and vexatious litigation history, during which she repeatedly asserted the same theories and arguments, the trial court did not abuse its discretion by imposing prefiling restrictions. We affirm.

Leach, J.

WE CONCUR:

Mann, J.

Appelwick, J.